**LEEDS BROWN LAW, P.C.**
BRETT R. COHEN (SBN 337543)
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: 516.873.9550
Fax: 516-747-5024
Email: bcohen@leedsbrownlaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HEINZ, on behalf of himself and all other individuals similarly situated,<br><br>Plaintiff,<br><br>against<br><br>NEXAR, INC.<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

1

# CLASS ACTION COMPLAINT

Plaintiff Brian Heinz ("Plaintiff") brings this Class Action Complaint against Defendant Nexar, Inc. ("Nexar" or "Defendant") individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including an investigation conducted by his attorneys, as follows:

## NATURE OF THE ACTION

1. Nexar is a dash cam company that promotes its products as "virtual CCTV cameras" and offers automatic cloud uploads of critical incidents, AI-driven insights, and real-time road alerts.[1] This action seeks damages for Plaintiff and other consumers who were victims of Defendant's fraudulent and misleading representations concerning the dash cam's security and privacy features.

2. Nexar monetizes users' data and recordings by repackaging them into various products. One of those is the company's CityStream map which uses recent and blurred images taken by Nexar dash cams, superimposes them on a publicly available map, and annotates things such as yield or speed limit signs, damaged roads, and other hazards.

3. According to a report from 404 Media, in September 2025, a hacker accessed a database of video recordings taken from Nexar-branded cameras, which are built to be placed in drivers' cars.

4. In a clip provided by the hacker to 404 Media, a Nexar camera is faced towards the inside of the car, capturing a rideshare driver picking up passengers. In these videos, the riders' faces are clearly visible.

5. The hacker had found all these videos on an improperly secured Amazon Web Services (AWS) bucket. An AWS bucket acts as a virtual file folder in the cloud where users can store various types of data and the hacker found more than 130 TB worth of data.

---

[1] https://www.getnexar.com/ (last accessed October 6, 2025)

1
CLASS ACTION COMPLAINT

6. According to the hacker, every Nexar dash cam is equipped with a "key" to Nexar's database. The key allows users to upload their own camera's data to the database. However, the key also allows users to access the data uploaded from other users' cameras.

7. Nexar makes strong promises about how it will protect users' privacy. Indeed, in its privacy policy, Nexar boldly proclaims that "[w]hile privacy laws may vary between jurisdictions, Nexar is committed to protecting personal data in accordance with this Privacy Policy, customary industry standards, and such appropriate lawful mechanisms and contractual terms requiring adequate data protection, regardless of any lesser legal requirements that may apply in the jurisdiction to which such data is transferred."[2] Obviously, giving any Nexar camera user effectively *carte blanche* access to all other Nexar users' video files is not compliant with any "customary industry standard," nor is it "adequate data protection."

8. Nexar further promises that, for its training data, "[d]espite the inclusion of non-anonymized content, we uphold the highest standards of data security and privacy: Access to training data is strictly confined to the team members directly involved in the AI development process; We employ advanced encryption and stringent access controls to safeguard against unauthorized access to the data; The training data is retained exclusively for a limited period of time for the training purposes for which it was collected, ensuring it is not used beyond its intended scope; The training data closely mirrors the lifecycle of personal data. When a User decides to delete their rides or deactivate their account, we ensure that the corresponding training data is also deleted from our systems."[3]

9. Nexar further represents that that it "anonymize[s] Camera-Generated Content gathered and shared among Users. The raw images may capture individuals, license plates, and other personal data recorded via the Camera (e.g., papers left on the dashboard, parking cards, etc.). To prevent the identification of individuals in such context, we make sure that all identifiable

---

[2] https://www.getnexar.com/privacy/ (last accessed October 6, 2025)

[3] *Id.*

2
CLASS ACTION COMPLAINT

elements are anonymized. The anonymization is performed directly on the User's device, even before the information is sent to Nexar."[4]

10. Finally, with respect to data security, Nexar promises that "We and our hosting services implement systems, applications and procedures to secure your personal data, to minimize the risks of theft, damage, loss of information, or unauthorized access or use of information. These measures provide sound industry-standard security, confirmed also by Nexar's ISO/IEC 27001 and 27018 certifications."[5]

11. Purchasers of Nexar's cameras rely on such representations of anonymity when choosing to purchase Nexar's products.

12. Plaintiff and consumers reasonably relied on Nexar's marketing and representations when purchasing the Camera products, which omitted that the cameras were not, in fact, secure, did not, in fact, protect users' privacy, and thus, did not abide by any industry standard. Plaintiff and other members of the Class thus did not receive the products that they were promised, *i.e.*, dash cam Cameras that protected personal data, did not share their data with any unauthorized third parties, that anonymized their collected data, and that secured the data collected by end-to-end encryption and safeguarded against unauthorized access. Accordingly, Plaintiff brings this class action on behalf of: (i) all individuals in the United States who purchased dash cam cameras, during the applicable statute of limitations period (the "Nationwide Class"); and (ii) all individuals in California State who purchased dash cam cameras, during the applicable statute of limitations period (the "California Subclass"), to recover restitution and damages, and for injunctive relief.

**JURISDICTION AND VENUE**

13. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of

---

[4] *Id.*

[5] *Id.*

1  $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members
2  of the proposed Class who are diverse from Defendant (including Plaintiff), and (4) there are more
3  than 100 proposed Class members.

4  14.  This Court has personal jurisdiction over Defendant because Defendant has
5  purposefully availed themselves to the law, rights, and benefits of the State of California.

6  15.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a)(1) because many
7  Class Members reside in the Eastern District of California, and throughout the state of California.
8  Moreover, a substantial part of the events or omissions giving rise to the Classes' claims occurred
9  in this district.

**PARTIES**

11  16.  Plaintiff Heinz is a resident and citizen of Yolo County, California, who purchased
12  and used a dash cam camera to record his travels.

13  17.  Defendant Nexar is a Delaware corporation, with its headquarters located at 135 W
14  41st Street, New York, New York 10036.

15  18.  Plaintiff reserves the right to amend this complaint to add different or additional
16  defendants, including without limitation any officer, director, employee, supplier, or distributor of
17  Defendant and/or the dash cam who has knowingly and willfully aided, abetted, or conspired in
18  the false and deceptive conduct alleged herein.

**FACTUAL ALLEGATIONS**

A. **Background information**

21  19.  Nexar markets, distributes, and sells its dash cams throughout the United States.
22  Consumers can purchase these products online, either directly through Nexar or another online
23  retailer. These dash cams are specifically marketed to capture every moment with features like
24  accident detection and seamless app integration.

25  20.  In conjunction with the dash cams, Nexar also utilized Real-Time mapping
26  software utilizing their CityStream Live software.

4
CLASS ACTION COMPLAINT

21. According to Defendant, the CityStream System requires users to opt-in for their dash cam data to be used for mapping purposes. But even if users have opted in to allow their data to be utilized for mapping, they anticipate that their data is being protected within the firewalls set up by Defendant – the hacker proved otherwise as it notedly only took him two hours to hack into 130 Terabytes of Plaintiff and class members' data.

**B. Purchasers of the Camera Products Rely on Defendant's Misrepresentations**

22. Many users, including Plaintiff, selected Defendant' dash cam in reasonable reliance on Defendant's representations and omissions concerning privacy and security.

23. Specifically, Plaintiff purchased the SCOSCHE NEXS1 Dash Cam online through the Nexar website in March of 2021 for personal use. Since having purchased it, Plaintiff Heinz has utilized the dash cam to record his travels.

24. Plaintiff uses Nexar's app on his phone to upload his dash cam footage and data which automatically uploads to Nexar's cloud-based system.

25. When purchasing the dash cam and utilizing Nexar's systems to store his data, Plaintiff reasonably believed that Defendant Nexar would employ proper security measures to protect his data and make do on their representations of valuing their consumer's privacy.

26. Plaintiff and Class members and would not have purchased Nexar's products, or would have paid less for them, had Defendant truthfully represented its privacy and security practices. Defendant knew that consumers relied on their statements concerning the privacy and security features of the dash cams as well as their CityStream Service.

**C. Security Professionals Find That Nexar's Representations Are False**

27. While consumers, including Plaintiff, reasonably believed and relied upon Nexar's representations and omission concerning privacy and security, it was not until August 2025 that consumers discovered the data associated with their dash cams and their CityStream data was not

in compliance with the ISO/IEC 27001[6] and 27018[7] certifications that Defendant boasts about in their Privacy Policy.

28. Despite having both these certifications, one which requires the constant maintenance and improvement of ISMS, a hacker was able to get into Nexar's cloud-based system within 2 hours and collect 130 Terabytes of data.

29. In September 2025, a hacker reached out to 404Media to bring to light Defendant's lax privacy practices. In several images and videos captured by the hacker, people are clearly unaware that a third party may be watching or listening in. One of the images even shows a driver heading towards the entrance of CIA headquarters. Other images that are publicly available in the CityStream Service that Defendant publishes online show drivers around sensitive Department of Defense locations.

30. A recent podcast by 404 Media on Nexar further clarifies that despite Nexar's claims of anonymizing data, the AWS bucket accessed by the hacker contained unblurred and non-anonymized video imagery.

31. Upon information and belief, this non-anonymized data comprises backup video data from Nexar dash cam users that does not strip out identifiable elements, despite Nexar's claims that "all identifiable elements are anonymized" and that the anonymization occurs "even before the information is sent to Nexar."

32. Included in these images and videos that the hacker was easily able to access, the hacker also found a list of companies and agencies that may have interacted with Nexar's company data including, Apple, Microsoft, Amazon, Google, Pokemon Go creator Niantic, transportation companies Lyft and Waymo, and numerous AI and logistics focused companies.

---

[6] The ISO 27001 standard, specifies the requirements for establishing, implementing, maintaining, and continually improving an Information Security Management System (ISMS). *See also* https://www.kiteworks.com/risk-compliance-glossary/iso-27000-standards/

[7] The ISO 27018 is an extension that focuses on specifically protection Personally Identifiable Information (PII) in public cloud environments. *See also* https://www.kiteworks.com/risk-compliance-glossary/iso-27000-standards/

**CLASS ACTION ALLEGATIONS**

33. Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

34. The proposed Class is defined as follows:

> **Nationwide Class:** All persons within the United States who purchased Defendant's dash cams or opted in to the CityStream, during the applicable statute of limitations.
>
> **California Subclass:** All persons within the state of California who purchased Defendant's dash cams or opted in to the CityStream, during the applicable statute of limitations.

35. The following are excluded from the classes: (1) government entities; (2) any Judge presiding over this action and members of his or her family; (3) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which a Defendant or its parent has a controlling interest (as well as current or former employees, officers, and directors); (4) persons who properly execute and file a timely request for exclusion from the Class; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (6) Plaintiff's counsel and Defendant's counsel; and (7) the legal representatives, successors, and assigns of any such excluded persons.

36. The classes described in this complaint may be jointly referred to as the "Class" or "Classes" and members of the proposed classes may be jointly referred to as "Class members." Plaintiff reserves the right to amend or modify the Class definitions with greater specificity, further division into subclasses, or with limitation to particular issues as discovery and the orders of this Court warrant. In addition, the Court can define the Classes and create additional subclasses as may be necessary or desirable to adjudicate common issues and claims of the Class members if, based on discovery of additional facts, the need arises.

37. *Numerosity*: The proposed Class is so numerous that individual joinder of all Class members is impracticable. On information and belief, Class members number in the thousands. The precise number or identification of members of the Class is presently unknown to Plaintiff but

may be ascertained from Defendant's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

38. *Commonality*: Questions of law or fact common to the Class include, without limitation:

   a) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the dash cams were deceptive; Whether Nexar's actions violate the consumer protection statutes invoked herein;

   b) Whether Nexar's marketing of their dash cams and CityStream Service was likely to deceive or mislead reasonable consumers;

   c) Whether Nexar's conduct constitutes violations of the laws and statutes asserted herein;

   d) Whether Nexar's conduct was knowing and/or negligent;

   e) Whether Defendant was unjustly enriched at the expense of Plaintiff and Class members;

   f) Whether Plaintiff and Class members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

   g) Whether Plaintiff and the other Class members have been injured and the proper measure of their losses as a result of those injuries;

   h) Whether Plaintiff and the Class members are entitled to injunctive, declaratory, or other equitable relief; and

   i) Whether, as a result of Nexar's conduct, Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, prejudgment interest, or costs of suit.

39. Nexar engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

40. *Typicality*: The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class members were injured and suffered damages in substantially the same manner

as Plaintiff, Class members have the same claims against Defendant relating to the same course of conduct, and Class members are entitled to relief under the same legal theories asserted by Plaintiff.

41. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions.

42. *Predominance*: Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendant owed a duty to Plaintiff and the Class and whether Defendant breached its duties predominate over individual questions such as measurement of economic damages.

43. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

44. *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

45. The Class may be certified pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

46. The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and

a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

47. Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION
## COUNT I
### Violations of California's Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code §§ 17200, et seq.
### (on behalf of Plaintiff and the California Subclass)

48. Plaintiff repeats and re-allege the allegations above as if set forth herein.

49. Defendant committed acts of unfair competition, as described above, violation the Unfair Competition Law ("UCL").

50. Defendant's conduct constitutes "unlawful" business practice within the meaning of the UCL. It includes, without limitation, violations of the Song-Beverly Consumer Warranty Act, Cal Civ. Code § 1790 et seq., and negligent or fraudulent misrepresentation.

51. Defendant's conduct, as described above, also constitutes a "fraudulent" business practice violative of the UCL. As explained in the preceding paragraphs, Defendant's false statements about the security of their dash cams and databases fraudulently present the impression that the dash cams were adequately safe for use. This conduct was designed to deceive consumers as to the true quality and value of the Product consumers purchased.

52. Defendant knew or should have known that their false representations and conduct constituted unlawful, unfair, and fraudulent business practices likely to deceive a reasonable consumer.

53. Plaintiff and the California Subclass members have suffered injuries, in fact, and have lost money as a result of each Defendant's UCL violations in that they were deceived into purchasing the dash cams, which was not adequately safe or easy to use for the purposes of Plaintiff and the California Subclass members.

54. At a minimum, to the extent the Court ultimately deems the remedies at law that Plaintiff's requests inadequate, Plaintiff and the California Subclass members are entitled to equitable relief such as restitution and injunctive relief under Cal. Bus. And Pro. Code § 17203 enjoining Defendant from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices.

## COUNT II
**Breach of Implied Warranty of Fitness for a Particular Purpose
Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790 Et. Seq.)
(on behalf of Plaintiff and the California subclass)**

55. Plaintiff repeats and re-allege the allegations above as if set forth herein.

56. California Subclass members are consumers who purchased Nexar's dash cams and opted in to the CityStream Service. California Subclass Members did not use the Product for business purposes.

57. California Subclass members purchased the dash cam either directly from Defendant or from an authorized retailer in California. Plaintiff and California Subclass members purchased the Product with the expectations that Nexar would adequately protect and safeguard their data. Defendant represented that the cloud-based system used to store user's dash cam footage was secure and reliable. Individuals who purchased the dash cams for its storage and security features could not use it for that purpose because they were not secure.

58. California Subclass Members discovered that Nexar's dash cam and data storage systems were not as secure as claimed when Nexar.

59. Since Defendant manufactures hardware and software utilized to improve road safety and advertises their products to be secure, Plaintiff and the California Subclass members relied on Defendant's knowledge and judgment in implementing and protecting their databases from unauthorized actors.

60. Defendant had reason to know that Plaintiff and California Subclass Members would rely on their knowledge and judgement in safeguarding data of their consumers.

61. Plaintiff and California Subclass Members were harmed by Defendant's false representations.

62. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent and omit information concerning the security and privacy of the Nexar dash cams and the CityStream Service.

63. Plaintiff and members of the California Subclass were injured as a result because (a) they would not have purchased the products if they had not been misled by Defendant's deceptive practices; and (b) they overpaid Defendant's products on account of Defendant's misrepresentations and omissions.

64. The dash cam and its accompanying data storage systems are, in fact, not adequately secure for its intended use, and Plaintiff and the California Subclass have Members have suffered damages as a result of Defendant's breach of implied warranty, the nature and exact amount to be determined at trial.

### COUNT III
### Breach of Implied Warranty of Merchantability
### Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790 Et Seq.)
### (on behalf of Plaintiff and the California subclass)

65. Plaintiff repeats and re-allege the allegations above as if set forth herein.

66. Plaintiff and California Subclass members are consumers who purchased Nexar's dash cams and opted in to using Nexar's cloud based storage system, primarily for personal purposes. California Subclass members did not use the Product for business purposes.

67. California Subclass Members purchased the dash cams either directly from Defendant or from an authorized retailer in California.

68. Pursuant to Cal. Civ. Cod. § 1782, the dash cams was accompanied by an implied warranty of merchantability.

69. Defendant impliedly warranted that their dash cams would pass without objection in the trade for the ordinary purpose for which it was intended. This includes the dash cam and its accompanying systems and databases being adequately protected to function as a secure device

and conforming to the promises or affirmations of fact made to Plaintiff and California Subclass members.

70. As evidenced by the data breach alleged herein, Nexar's dash cam was non-merchantable because it did not have the quality or security the buyer would reasonably expect. It would not pass without objection in the trade; namely, it was not adequately protected to serve as a secure dash cam and because it did not or could not conform to the promises or affirmations of fact made to Plaintiff and California Subclass Members.

71. As a result of Defendant's acts or omissions, Plaintiff and California Subclass members have sustained damage in the amount actually paid, plus prejudgment interest thereon at the legal rate.

72. As a further result of Defendant's actions, Plaintiff and California Subclass members have sustained damages equal to the difference between the value of the Product as accepted and the value the Product would have had if it had been as warranted.

73. As a direct result of Defendant's act or omissions and in pursuing Plaintiff's claim, Plaintiff needed to retain legal counsel. Pursuant to the Song-Beverly Consumer Warranty Act, Plaintiff is entitled to recover his attorneys' fees based upon actual time expended and reasonably in connection with the commencement and prosecution of this action.

## COUNT IV
**Unjust Enrichment**
**(on behalf of Plaintiff and the National Class)**

74. Plaintiff re-alleges and incorporates the allegations contained above as if fully set forth herein.

75. Plaintiff and the other members of the Class conferred benefits on Nexar by purchasing the dash cams and opting in to the CityStream Service.

76. Nexar has been unjustly enriched in retaining the revenues derived from the purchase of the dash cams by Plaintiff and the other members of the Class.

77. Retention of those monies under these circumstances is unjust and inequitable because Nexar's marketing of the Products was misleading to consumers, which caused injuries to Plaintiff and the other members of the Class because they would have not purchased the dash

cams or opt in to the CityStream Service if Nexar had disclosed that the dash cams and CityStream Service were not secure.

78. Because Nexar's retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the Class is unjust and inequitable, Nexar must pay restitution to Plaintiff and the other members of the Class for their unjust enrichment, as ordered by the Court.

## **DEMANDS FOR RELIEF**

79. Plaintiff demands a trial by jury on all issues.

**WHEREFORE,** Plaintiff, on behalf of themselves and the Class, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under CCP § 382;

(b) Awarding monetary damages, including damages;

(c) Awarding punitive and treble damages;

(d) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including a reasonable allowance of attorney's fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(e) Granting such other and further relief as the Court may deem just and proper

Dated: October 8, 2025

*/s/ Brett R. Cohen*
**LEEDS BROWN LAW, P.C.**
Brett R. Cohen, Esq. (SBN 337543)
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
bcohen@leedsbrownlaw.com

*Counsel for Plaintiff and the Putative Class*